## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

| | |
|---|---|
| JULIE LOFTIS, for TRAVIS LOFTIS (Deceased), | |
| Plaintiff, | No. C12-3090-LTS |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

___

Plaintiff Julie Loftis, proceeding on behalf of her now-deceased husband, Travis Loftis, seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying Travis's applications for Social Security Disability Insurance benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act).[1] Julie contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that Travis was not disabled during the relevant period of time. For the reasons that follow, I find that the Commissioner's decision must be reversed and remanded for further proceedings in accordance with this order.

___

[1] To avoid confusion, I will refer to Mr. and Ms. Loftis by their first names throughout this opinion.

## Background

Travis was born in 1974. AR 132. He completed high school and attended four years of college, but did not obtain a degree. AR 27. He had past relevant work as a sales representative and construction laborer. AR 258.

Travis protectively filed his applications for SSI and DIB on, respectively, August 31, 2009, and December 3, 2009. AR 132-39. His DIB application alleged an onset date of November 1, 1995, while his SSI application alleged an onset date of January 1, 2009.[2] AR 132, 136. Both applications were denied initially and on reconsideration. AR 8. Travis then requested a hearing, which was conducted May 12, 2011, by Administrative Law Judge (ALJ) Theodore P. Kennedy. *Id.* Travis testified during the hearing, as did Julie and a vocational expert (VE). AR 24-56.

The ALJ issued a decision denying Travis's applications on June 1, 2011. AR 8-17. On September 26, 2012, the Appeals Council denied Travis's request for review. AR 1-3. As such, the ALJ's decision is the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.[3]

---

[2] There are two relevant periods of disability based on these applications. The relevant period for the SSI application is from August 31, 2009 (the date the application was filed) to the date of the ALJ's decision. *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (acknowledging that SSI benefits are not payable for a period prior to the application). The relevant period for the DIB application is from November 1, 1995 (the alleged onset date), to December 31, 1998 (the date last insured). *See Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (claimant must "establish her being disabled prior to the expiration of her insurance to be entitled to disability insurance benefits."). Therefore, the record must establish that Travis was disabled between November 1, 1995, and December 31, 1998, to qualify for DIB or as of August 31, 2009, to qualify for SSI.

[3] The date of Travis's death does not appear in the record but it apparently occurred while the Appeals Council was considering his request for review. He signed the request (AR 4) on June 28, 2011, but the Notice of Appeals Council Action (AR 1), dated September 26, 2012, was directed to Julie with an indication that Travis was deceased.

2

On November 21, 2012, Julie commenced an action in this court seeking review of the ALJ's decision. On December 28, 2012, with the parties' consent, United States District Judge Mark W. Bennett transferred the case to me. The parties have briefed the issues and the matter is now fully submitted.

*Disability Determinations and the Burden of Proof*

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit

3

the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S. Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform

4

exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, even though the burden of

5

production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### *Summary of ALJ's Decision*

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through December 31, 1998.

(2) The claimant engaged in substantial gainful activity front December 2005 through September 2006 and June-August as well as December 2008 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

(3) However, there has been a continuous l2-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

(4) The claimant has the following severe impairment: schizophrenia, paranoid with psychotic features (20 CFR 404.1520(c) and 416.920(c)).

(5) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(6) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is mentally limited to short, simple tasks and brief and superficial contact with others.

(7) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(8) The claimant was born on July 22, 1974 and was 21 years old, which is defined as a younger individual 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(9) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(10) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(11) Considering the claimant's education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(12) The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 1995, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 10-17.

At Step One, the ALJ found that Travis did engage in substantial gainful activity (SGA), at times, during the period of his alleged disability. AR 10. However, because there were continuous 12-months periods during which he did not engage in SGA, and because he had last engaged in SGA in December 2008, the ALJ found that Travis was not precluded from seeking benefits. *Id*.

At Step Two, the ALJ found that Travis had one severe impairment: schizophrenia, paranoid with psychotic features. AR 11. The ALJ also noted an

7

additional diagnosis of "affective disorder described as bipolar" and stated that this diagnosis had essentially replaced the diagnosis of paranoid schizophrenia. *Id*. Regardless of the specific diagnosis, the ALJ found that Travis had a severe mental impairment that caused more than minimal interference with basic mental work activities. *Id*. The ALJ found no impairment of a physical nature. He stated that although Travis was diagnosed with stage II chronic kidney disease, the disease was stable and caused no particular limitations with regard to basic work activities. *Id*. As such, it was not a severe impairment. *Id*.

In his Step Three analysis, the ALJ found that Travis's severe mental impairment, either alone or in combination with any other impairments, did not meet or medically equal any listed impairment. *Id*. First, he noted that no physician has opined that Travis has a listed impairment. *Id*. AR 18. He then specifically referenced listings 12.03 and 12.04 and stated that the "paragraph B" criteria do not apply. The ALJ noted that under "paragraph B," the mental impairment must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, with each being of extended duration.[4] *Id*. A "marked" limitation is more than moderate but less than extreme. *Id*. Repeated episodes of decompensation, each of extended duration, means three episodes within one year, or an average of once every four months, each lasting at least two weeks. *Id*.

The ALJ found that Travis was "no more than moderately limited in any area of basic mental functioning." *Id*. He also determined that Travis had mild limitations

---

[4] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 CFR Part 404, Subpart P, Appendix 1.

with regard to activities of daily living and moderate difficulties with social functioning, concentration, persistence or pace. *Id.* Finally, he found that Travis experienced no episodes of decompensation, each of extended duration. *Id.* He stated that while Travis had two episodes requiring psychiatric hospitalization, those episodes occurred ten years apart and each lasted less than two weeks. *Id.*

The ALJ also stated that he had considered the "paragraph C" criteria, as well, and found that the evidence did not establish the presence of those criteria. AR 12. As such, the ALJ determined that Travis's mental impairment did not meet or medically equal any listed impairment. *Id.*

At Step Four, the ALJ undertook a residual functional capacity (RFC) assessment. He found that Travis could perform a full range of work at all exertional levels but – due to his severe mental impairment – he would be limited to "short, simple tasks and brief and superficial contact with others." AR 12-15. In making this finding, the ALJ first described Travis's own allegations as to the nature and effects of his symptoms. AR 12. He noted that Travis claimed to be unable to engage in substantial gainful activity due to fatigue, depression, anxiety, low self-esteem and an inability to maintain focus or concentration. AR 12-13. The ALJ also noted that Julie, through a third-party function report and her testimony at the hearing, corroborated Travis's allegations. AR 13.

The ALJ made an express finding that these allegations were not credible to the extent that they were inconsistent with the ALJ's RFC determination. *Id.* He did not explain this finding in detail, instead referring to "the reasons discussed throughout this decision." *Id.* Those reasons appear to include (a) the ALJ's belief that the allegations were not supported by the medical evidence, (b) Travis's statements concerning his daily activities, (c) Travis's brief but apparently successful employment as a seasonal UPS worker and (d) the fact that Travis was able to complete the coursework requirements of a four-year teaching degree. AR 13-15.

9

After discrediting Travis's and Julie's allegations, the ALJ analyzed the other evidence in the record. He acknowledged that Travis had "a longstanding history of mental health difficulties with remote and recent hospitalizations including a 5-day admit in March 2009." AR 13. He stated that Travis's earlier hospitalization, which occurred in 1996, resulted from Travis being "overwhelmed with his college work." *Id.* Similarly, the March 2009 episode occurred while Travis was back in college, attempting to complete his teaching degree. *Id.*

The ALJ noted that Travis had "experienced a degree of waxing and waning in his condition over the years." *Id.* However, he observed that Travis "has done well with compliant medication management and with remaining essentially within the parameters of the residual functional capacity established above." *Id.* For example, the ALJ stated that in June 2010, Travis's psychiatrist cleared him to engage in student teaching with supervision to monitor for the recurrence of symptoms. *Id.* The ALJ also observed that Travis's global assessment of functioning (GAF) scores during the relevant period of time had generally ranged from the 50's to the 70's, suggesting functional abilities that exceeded Travis's allegations.[5] AR 14.

The ALJ noted that Travis had worked as a seasonal employee for UPS from Thanksgiving through Christmas of 2010 and reported no difficulties in performing the

---

[5] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF score of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Id*. A GAF score of 71-80 means that if symptoms are present, they are transient and expectable reactions to psychosocial stressors (*e.g.*, difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork). *Id*.

duties of that position. *Id.* Moreover, Travis completed the classroom requirements for his teaching and coaching degree during the period of his alleged disability. *Id.* He had not yet received his actual degree because his condition interfered with his student teaching requirements. *Id.* And, in fact, the ALJ noted that teaching (or student teaching) would require functional abilities beyond Travis's RFC. *Id.*

Next, the ALJ discussed evaluation and treatment notes from Seasons Center for Community Mental Health for the period of June 2010 through April 2011. *Id.* A comprehensive intake assessment in February 2011 did not, according to the ALJ, result in findings inconsistent with the ALJ's RFC determination. *Id.* That assessment, as completed by a social worker, indicated that Travis had been diagnosed with schizophrenia but the diagnosis was changed to bipolar disorder during his most-recent hospitalization. AR 505, 507. Travis was found to be alert and cooperative, with appropriate behavior and normal speech. AR 505. His mood and thought content were both appropriate, his perceptions were normal and his thought process was logical. AR 506. His intelligence was average, his memory was intact and he was oriented to time, place, person and purpose. *Id.* His judgment and insight were found to be fair. *Id.* It was noted that Travis was on psychiatric medications, which were being managed by a nurse practitioner. *Id.* Travis reported that he wanted to work and was in the process of looking for "warehouse-type" jobs. AR 511-12.

The ALJ next discussed a mental status examination conducted in May 2011 by Dawn Howley, a psychiatric nurse practitioner. AR 15. Travis was referred for the examination by his attorney. AR 545. He reported that he was worried about his upcoming disability hearing but otherwise was pleasant, cooperative and a reliable historian. AR 547. His recent memory was found to be adequate. *Id.* He reported engaging in activities including boating, bowling, fishing, camping and working out. AR 546. His diagnosis was listed as "Bipolar I Disorder, most recent episode manic with

11

psychosis," and he was assessed with a GAF score of 49.[6] AR 547. Notwithstanding the GAF score, the ALJ concluded that the findings from the May 2011 assessment were "essentially in keeping with the [RFC] established above." AR 15.

The ALJ then discussed the opinion evidence of record. *Id*. He again acknowledged that the psychiatric nurse who conducted the May 2011 assessment assigned a GAF score of 49. *Id*. The ALJ stated that this score reflected "fairly significant impairment." *Id*. He also acknowledged that the same nurse expressed concern that Travis tended to decompensate when under stress. *Id*. The ALJ further noted that another psychiatric nurse had provided an opinion in November 2009 that Travis was unable to be employed in a competitive work environment. *Id.* (citing AR 407). The ALJ gave little weight to these opinions, finding that the record did not support a conclusion that Travis was unable to engage in any basic work activities on "a regular and reliable competitive basis," especially if Travis would remain "in the confines of the [RFC] established above along with treatment and medication compliance." *Id*.

By contrast, the ALJ afforded great weight to the opinions provided by a state agency consultant. *Id*. That consultant, Dee Wright, Ph.D., conducted a records review in April 2010 and completed a written mental RFC assessment and psychiatric review technique. AR 476-93. Dr. Wright noted that an initial review had been inconclusive due to a lack of medical evidence dating back to Travis's last-insured date but that additional evidence had since been added to the record. AR 478. She determined the new evidence was sufficient for the purposes of evaluating Travis's status. *Id*.

Dr. Wright then summarized various treatment notes and concluded that Travis did have some limitations of function during the relevant period of time, but those limitations were moderate, at most. AR 476-78. She noted, for example, that while he was

---

[6] A GAF score of 41-50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job, cannot work). *See* DSM-IV at 34.

"socially avoidant," he was "able to sustain short-lived, superficial interaction with others in appropriate ways when he perceived to be in his interest to do so." AR 479.

The ALJ found that the consultant's assessment was "supported by the longitudinal evidence of record which reflects that [Travis] is no more limited than allowed for therein." AR 15. As such, the ALJ's RFC determination largely incorporates that assessment. AR 12.

The ALJ next found that Travis's RFC would not permit him to perform any of his past relevant work. AR 15. This required the ALJ to move to Step Five and determine if the Commissioner had proved that Travis could perform other work that exists in significant numbers in the national economy. Here, the ALJ relied on the VE's testimony in response to hypothetical questions from the ALJ that were based on Travis's age, education, work experience and RFC. AR 16-17, 51-56. Based on that testimony, the ALJ found that Travis could perform various jobs, including industrial cleaner, kitchen helper/dishwasher and automobile detailer. AR 16-17. The ALJ further found that such positions exist in significant numbers in the national economy. AR 17. Therefore, the ALJ concluded that Travis was not disabled within the meaning of the Act from November 1, 1995, through the date of the ALJ's decision. *Id.*

### *The Substantial Evidence Standard*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence

13

and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's

decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## *Discussion*

Travis raises two issues in contending that the ALJ's decision is not supported by substantial evidence in the record as a whole:

I. The Medical Evidence Compels A Finding That Travis Was Disabled From And After March 15, 2009.

II. The ALJ's RFC Determination Is Not Supported By Substantial Evidence In The Record As A Whole.

*See* Doc. No. 12. These arguments overlap and, yet, do not touch on the key issue. I will address that issue first and will then discuss the appropriate relief.

### *1. Is The ALJ's Decision That Travis Was Able To Perform Other Work Supported By Substantial Evidence?*

At Step Four, the ALJ found that Travis's mental RFC limited him to performing short, simple tasks with only brief and superficial contact with others. AR 12. The ALJ further found that these limitations prevented Travis from performing any of his past relevant work. AR 15. Neither party challenges this finding.

When a claimant cannot perform past relevant work, the Commissioner has the burden to establish that there is other work that the claimant can do in light of the claimant's RFC, age, education and work experience. *See Bladow*, 205 F.3d at 358-59 n.5. The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in

15

significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner shows that the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. If the Commissioner cannot make this showing, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

This creates a problem for the Commissioner because the record in this case contains *no* medical opinions from any acceptable treating or examining source concerning Travis's functional limitations during the relevant periods of time. As discussed earlier, the record contains opinions from psychiatric nurse practitioners who examined Travis in 2009 and 2011. Nurse practitioners are not acceptable medical sources. *Lacroix v. Barnhart*, 465 F.3d 881, 886 (8th Cir. 2006); *see also* 20 C.F.R. §§ 404.1513(a), 416.913(a) (nurse practitioners not listed as acceptable medical sources). Only an acceptable medical source can give a medical opinion. *Lacroix*, 465 F.3d at 886 (citing authorities).

The only acceptable medical sources who have provided medical opinions in this case are state agency consultants who reviewed Travis's records but did not examine or treat him. AR 304-34, 476-95. Pursuant to *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), this does not suffice. In *Nevland,* like here, the Commissioner made a Step Five determination that a claimant who could not perform past relevant work could, nonetheless, perform various jobs identified by a VE. *Id.* at 857. And, like here, non-treating and non-examining physicians reviewed the claimant's records and gave opinions about the claimant's RFC, which the ALJ then used in formulating hypothetical questions to a VE. *Id.* at 858. The Eighth Circuit Court of Appeals began its analysis as follows:

> In our circuit it is well settled law that once a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual

16

functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir. 1982)(en banc); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983). It is also well settled law that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

*Id*. at 857. The court then noted that while the record contained many treatment notes, none of the treating physicians provided opinions concerning the claimant's RFC. *Id*. at 858. The court then stated:

In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir. 1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id*. In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity. As this Court said in *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975): "An administrative law judge may not draw upon his own inferences from medical reports. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974); *Willem v. Richardson*, 490 F.2d 1247, 1248–49 n. 3 (8th Cir. 1974)."

*Id*. [emphasis in original].

This case presents the same situation. The ALJ found that Travis had severe mental impairments and could not perform any of his past relevant work. AR 12, 15.

17

The Commissioner thus bore the burden of proving that despite those impairments, Travis had the RFC to do some kind of work that exists in the national economy. *Nevland*, 204 F.3d at 857. However, the ALJ determined Travis's RFC without the benefit of a medical opinion from any doctor who actually examined him. Instead, the ALJ relied on the opinion of non-examining state agency consultants in evaluating Travis's RFC and in formulating hypothetical questions to the VE. AR 12, 15, 51-56. Because the RFC was not supported by appropriate medical evidence, the VE's answers to the hypothetical questions do not constitute substantial evidence that Travis was able to perform other work. *Nevland,* 204 F.3d at 858; *see also Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

While Travis did not raise this argument, *Nevland* compels me to find that substantial evidence does not support the ALJ's determination that Travis was able to perform positions that exist in the national economy and, therefore, was not disabled. That determination must be reversed.

### 2. *What Is The Appropriate Remedy?*

Reversal for this reason would typically require remand with directions that the ALJ fully and fairly develop the record by obtaining a medical opinion, either from a treating source or via a consultative examination, as to Travis's RFC. Due to Travis's unfortunate death, however, an examination is not possible. The only alternative is to obtain a medical opinion from one of Travis's treating physicians. With Travis's original alleged onset date of November 1, 1995, that could be a daunting (if not impossible) task.

However, Julie's brief amends the alleged onset date to March 15, 2009, which corresponds to Travis's last psychiatric hospitalization (AR 264-65). Doc. No. 12 at 10. She requests a finding that Travis was disabled from and after that date. *Id.*

18

Case 3:12-cv-03090-LTS   Document 18   Filed 10/16/13   Page 18 of 20

This date is outside of the relevant time periods for Travis's DIB and SSI applications. Moreover, this new alleged onset date effectively removes Travis's DIB application from consideration as that program requires a claimant to prove disability prior to his or her date last insured. In this case, that date was December 31, 1998. Proceeding under the SSI application alone, Julie can seek benefits dating back no longer than September 1, 2009 (the month after the month in which the application was filed), if Travis was disabled as of August 31, 2009 (the date his application was filed). *See* 20 C.F.R. § 416.335. It is at least feasible that the ALJ may be able to obtain a medical opinion about Travis's mental RFC from one or more of his treating sources based on the application date of August 31, 2009. As such, I will remand this case for further proceedings, as described below.

## *CONCLUSION*

For the reasons set forth herein, the Commissioner's determination that Travis was not disabled is **reversed** and this case is **remanded** to the Commissioner for further proceedings. Judgment shall enter in favor of the plaintiff and against the defendant.

On remand, the ALJ must fully and fairly develop the record by attempting to obtain medical opinions from one or more treating sources as to Travis's mental RFC on and after August 31, 2009. If the ALJ is able to obtain such evidence, then he must revisit Step Four and (if necessary) Step Five of the disability-determination process. Among other things, this would require new findings as to Travis's mental RFC and new VE testimony based on the reformulated RFC. The ALJ would then have to determine if Travis was able to perform past relevant work and, if not, whether his mental RFC would have allowed him to perform other work that was available in significant numbers in the national economy.

19

Case 3:12-cv-03090-LTS   Document 18   Filed 10/16/13   Page 19 of 20

If the ALJ is not able to obtain a medical opinion from any treating source as to Travis's mental RFC on and after August 31, 2009, then benefits must be awarded based on that date, as the Commissioner will be unable to establish that Travis had the mental RFC to perform other work.

**IT IS SO ORDERED.**

**DATED** this 16th day of October, 2013.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE

20

Case 3:12-cv-03090-LTS    Document 18    Filed 10/16/13    Page 20 of 20